## City Court.

### General Term—February, 1884.

## LOUIS SPATZ, PLAINTIFF AND RESPONDENT, *against* JOHN SCHEINER, DEFENDANT AND APPELLANT.

The landlord of a tenement house, occupied by numerous tenants, is bound to keep the roof in repair, yet he is not an insurer nor is he required to exercise any other than ordinary care in his management of the property, and in the absence of negligence, is not liable for damage done to a tenant's goods by a rain-storm, until after knowledge or notice of the defect complained of.

The plaintiff and his two assignors occupied different apartments in the tenement house known as No. 77 First avenue, in the city of New York. They were monthly tenants, and the defendant was their landlord and the owner of the property. On the 23d day of September, 1882, a heavy storm occurred, and rain percolated through certain crevices in the roof and ran into the apartments occupied by the plaintiff and his two assignors, and injured certain property belonging to them, for which injury the jury awarded the plaintiff $450. From the judgment entered upon this verdict the defendant appeals.

*M. C. Gross*, for appellant.

*Charles Steckler*, for respondent.

McADAM, Ch. J.—There was no covenant by the lannlord to repair, and he is liable, if at all, on the sole ground of negligence. While it is true that the landlord of a tenement house occupied by numerous tenants is bound to keep the roof in repair; yet, he is not an insurer, nor is he required to anticipate a leak nor exercise any other than ordinary care in his management of the property. To charge him as landlord, it was necessary to show that he neglected, after hav-

ing knowledge or notice of the defective condition, to repair the roof with promptitude, or, if he had no such notice or knowledge, that he had omitted to use such reasonable means and precautions for ascertaining its condition and making requisite repairs as his relation to it, and his duty to the several tenants demanded at his hands (Henkel v. Hurr, *Daily Reg.* November 28, 1883). The evidence fails to show any such neglect as amounts to negligence.

The plaintiff occupied the fifth floor of the tenement, and had resided there for about one year prior to the leakage of which he complains, and this was the first injury of the kind he had suffered. The only evidence of notice to the landlord of the defects in the roof was given by the witness Liederback (one of the assignors), who testified that "about a month before the accident occurred," he spoke to the defendant in reference to the roof, and that the defendant said "all right, I will attend to it." Francis Scheffe, a tinsmith, testified that he remembered the storm of September 23d, 1882, and that about fourteen days previous thereto, he repaired the roof and made everything tight. His evidence, which is uncontradicted, is consistent with that given by Liederback, and proves that the notice given by him met with the necessary attention on the part of the landlord. The defendant denies that he had knowledge or notice of any defects in the roof until the storm came which caused the damage. This in substance is about all the proof there is in the case upon the question of negligence, and it fails to show that the defendant omitted to do any act which an ordinary prudent man would have done under the circumstances.

The fact that a leak occurred does not of itself prove negligence, nor does the mere fact of damage give the tenant a right of action. The landlord's liability rests wholly upon actual negligence in which

the duty or obligation of the landlord is only an element, a most important one, it is true, but by no means exclusive or controlling (Henkel v. Hurr, *supra*). The character of the weather on the day of the injury and for the four preceding days was given by the witness Merrill, who has charge of the Signal Service Bureau in this city. He testifies from the official records of that department as follows: "On the 19th of September, 1882, the weather was very sultry and moist; on the 20th, a thunder-storm, between 9 and 10:35 p. m., 59–100 inch of rain: upon the 21st, light rain began before sunrise, 78–100 inch; it was quite heavy at intervals; upon the 22d, light rain before sunrise; it began again at 7:20 a. m., and ended at 1:05 p. m.—total rain-fall 1 69–100 inches. Upon the 23d the rain began before sunrise and continued all day; was remarkably heavy fall, 6 17–100 inches of rain, the heaviest daily fall recorded since the establishment of the station in 1870. It ceased before sunrise the next morning. It was at its heaviest from about 1 o'clock of that day until 8 o'clock that night."

The proofs show that it was during the heaviest portion of this unprecedented storm that the rain percolated through and did the damage complained of. The roof had served as a complete protection up to this time.

The case presented, viewed in the light of this testimony, demonstrates that the unusual fall of rain was such as no ordinary foresight or prudence could either foretell or guard against. It is difficult to infer and impute. negligence to the defendant under such circumstances.

It follows, therefore, that the judgment appealed from must be reversed and a new trial ordered, with costs to the appellant to abide the event.

HALL, J., concurs.